## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

Ronnie Davis,

    Plaintiff

                            Case No. _____

V.

eMortgage Funding LLC,
A Michigan Limited Liability Company

&

                            Judge _____

Samer Ajami, an individual residing in the
State of Michigan

Jointly and Severally

---

**There is no other action pending between the parties concerning the matters raised in this Complaint, and no prior action has been resolved that would preclude the relief sought herein."**

**COMPLAINT**

**&**

**JURY DEMAND**

Plaintiff, Ronnie Davis, by his counsel Gudeman & Associates, P.C., complains against the Defendants as follows:

PARTIES

1. Plaintiff, Ronnie Davis is an individual who a resident of the State of California, living part-time in the State of Michigan.

2. Defendant eMortgage Funding LLC is a Michigan Limited Liability Company formed under the laws of the State of Michigan and maintaining its principal place of business at 320 East Big Beaver Rd., Suite 400, Troy, MI 48083

3. eMortgage Funding LLC is a federally licensed mortgage broker, having NMLS: 1059364 & Individual NMLS: 2181832, licenses, doing business in the State of Michigan and elsewhere.

4. Defendant Samer Ajami ("Ajami") is a resident of Michigan whose exact location is unknown to Plaintiff, who is or was an employee or agent of the eMortgage Funding Company and who conducts business over the internet and through telecommunications companies.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over this action pursuant to <u>28 USCS § 1331</u>, because this action arises under the laws of the United States, specifically the Telephone Consumer Protection Act (hereinafter the "TCPA"), <u>47 USCS § 227</u>.

6. This Court has personal jurisdiction over eMortgage Funding Company based on its significant contact with Plaintiff and others within the State of

Michigan and is also nationally licensed to do business in the State of Michigan

7. Venue is proper in the United States District Court for the Eastern District of Michigan pursuant to 28 USCS § 1391, and because the acts of Defendants took place within the State of Michigan and within the Eastern District of Michigan.

8. All parties reside or conduct business within this court's district.

## STATEMENT OF FACTS

9. eMortgage identifies prospective clients, including Plaintiff, by means of online marketing and solicitation followed up with telephonic contact by its brokers.

10.    Defendant Ajami at the times which Plaintiff complains of the Defendants, Ajami was either an employee of Defendant eMortgage or was its commissioned sales agent.

11.    Defendant Ajami was given Plaintiff's name as a prospective customer, a "lead," by Defendant eMortgage.

12.    Defendant Ajami then contacted Plaintiff, for purposes of soliciting Plaintiff's business.

13.    Ajami, on behalf of eMortgage Funding Company, has made multiple telephone calls and has sent numerous texts to Plaintiff to solicit Plaintiff's mortgage financing business and continues to do so.

14. After the first call, during which Plaintiff told Ajami he was not interested in hiring or contracting Defendants, Defendants' telephone calls and texts were ongoing, continuous, unwarranted, stress-inducing and harassing in nature.

15. Plaintiff requested several times that Ajami stop contacting him.

16. Even if the Defendants were to successfully claim that they had a "business relationship" with Plaintiff, that business relationship ceased to exist when Plaintiff first requested that Defendants' attempts to contact him cease.

17. Many of the Defendants' harassing telephone calls and texts and texts were made after Plaintiff had secured mortgage financing from another mortgage lending company and after Plaintiff communicated that fact, several times, to Defendants through Ajami.

18. Defendants' telephone calls are described on Exhibit A, attached to this Complaint and incorporated by reference.

19. All calls from Defendants were made to Plaintiff's cell phone.

20. Defendants also sent numerous text messages to Plaintiff including, by way of example and not limitation:

| Date | Time |
|---|---|
| December 10, 2025 | 8:46 PM |

| December 11, 2025 | 11:33 AM |
| --- | --- |
| December 11, 2025 | 5:25 PM |
| December 12, 2025 | 2:18 PM |
| December 12, 2025 | 5:32 PM |
| December 12, 2025 | 5:52 PM |
| December 12, 2025 | 6:12 PM |
| December 12, 2025 | 6:13 PM |
| December 12, 2025 | 9:16 PM |
| December 16, 2025 | 12:06 PM |
| December 16, 2025 | 12:32 PM |
| December 16, 2025 | 12:33 PM |
| December 17, 2025 | 9:30 PM |
| March 4, 2026 | 6:15 PM |

21. Without regard to having been previously informed that Plaintiff did not want a business relationship with Defendants and having informed Defendants that Plaintiff had secured alternative financing, Defendants, through Ajami, and sometimes others, continued to make calls and texts to Plaintiff at indiscriminate times of the day.

22. Defendant Ajami via a telephone call intruded into the closing of the mortgage financing that Plaintiff had secured for his California residence and tried to "browbeat" Plaintiff and the Notary who was in attendance into foregoing the closing of that mortgage loan and replacing it with financing from eMortgage.

23. Attempting to get Ajami to stop his harassing telephone calls, Plaintiff requested to be placed on Defendant eMortgage's internal Do Not Call list maintained by eMortgage Funding Company.

24. Plaintiff also registered himself on the federal maintained Do NOT CALL LIST, see Exhibit B, attached to this Complaint and incorporated by reference, and informed Ajami of his doing so.

25. Plaintiff believed that Plaintiff was, in fact, placed on eMortgage's internal Do Not Call list.

26. At the time of the filing of this Complaint, Plaintiff believes that Defendant eMortgage does not maintain a Do Not Call List or that if it does it ignores that list in the conduct of its day-to-day business.

27. On information and belief, Defendant Ajami ignores any requests that his contacts be placed on a Do Not Call List or Ajami ignores the Defendant eMortgage's Do Not Call List, if, in fact, one exists and is properly maintained.

28. Plaintiff provided verbal notice to eMortgage Funding Company and Ajami, several times, requesting that they cease and desist from making telephone calls and texts to Plaintiff.

29.   Notwithstanding Plaintiff's request that he cease and desist, Ajami continued his harassing phone calls during which Ajami insists the funding from eMortgage is superior to that offered by the alternate mortgage lender with which Plaintiff closed his mortgage.

30.   Due to Defendants' egregious and illegal conduct, Plaintiff filed a complaint against Defendants with the City of Troy Police, See Exhibit C.

31.   However, the harassing phone calls have continued to be made to Plaintiff by Ajami or other representatives of eMortgage Funding Company under Defendant Ajami's control and direction.

32.   On information and belief, Plaintiff believes that other persons contacting Plaintiff were and remain under the control and direction of Ajami during all times for which Plaintiff complains.

33.   Despite having asked to be placed on the internal Do Not Call list, eMortgage Funding Company  and Ajami or others acting under his direction and control continued to make unwanted, harassing telephone calls and texts to Plaintiff.

34.   Despite being placed on the federal Do Not Call List, eMortgage Funding Company  and Ajami or others acting under his  direction or control continued to make unwanted, harassing telephone calls and texts to Plaintiff.

35.   Despite receiving verbal and written cease-and-desist notices, EMortgage Funding Company  Ajami or others under his  direction or control continued to make unwanted, harassing telephone calls and texts to Plaintiff.

36.  The continued calls caused Plaintiff to suffer damages in the form of invasion of privacy, harassment, and annoyance.

37.  Ajami acted jointly with EMortgage Funding Company in making the telephone calls and texts to Plaintiff.

38.  Ajami is jointly and severally liable with EMortgage Funding Company for the violations described herein.

39.  Defendants failed to maintain and abide by a Do Not Call List or similar record of persons who do not want to be contacted by Defendants, in violation of the Telephone Consumer Protection Act.

40.  Ajami pursued the course of action described above, in addition to a profit motive, purposely to cause Plaintiff duress and to interfere with his conduct of his day-to-day activities.

41.  Defendants' illegal and unwarranted activities continued up to at least March 18, 2026.

## CLAIMS FOR RELIEF

### Count I

### Violation of  47 USCS § 227

(Against defendant eMortgage Funding Company )

42.  Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

43.  Defendant made multiple telephone calls and texts to Plaintiff.

44. Even after being informed that Plaintiff no longer was interested in doing business with EMortgage Funding Company, that Defendant, through its employee or agent, continued to make ongoing and harassing telephone calls and texts to Plaintiff.

45. Even after being told that Plaintiff had closed a mortgage loan with another source, Defendants continued to harass Plaintiff with unwarranted and illegal phone calls.

46. The dates of Plaintiff's calls are described on Exhibit A to this Complaint and incorporated by reference.

47. The calls were made for purposes of advertisement and telephone solicitation or in connection with the telemarketing of Defendant eMortgage's mortgage lending business.

48. All calls made by Defendant were initiated by Defendant attempting to sell mortgage products and services to Plaintiff.

49. All but one of Defendant's calls were made subsequent to Plaintiff requesting that he be placed on the Do Not Call List

50. Defendants' calls persisted even after Plaintiff requested that he be placed on the Do Not Call List and after Plaintiff had secured mortgage financing from another mortgage lender.

51. Defendants' calls persisted even after Plaintiff had placed on the Do Not Call List established under the TCPA and after Plaintiff had secured mortgage financing from another mortgage lender.

52. Defendants' call attempted to dissuade Plaintiff from closing the transaction with another mortgage lender, after Plaintiff had told Defendants that he had already committed to close the contemplated transaction with a competitor of Defendant EMortgage Funding Company and did not want to proceed with Defendant eMortgage Funding.

53. Defendant made calls to Plaintiff after Plaintiff "begged" Defendants to stop calling him.

54. Defendant knew or should have known that Plaintiff was on the Do Not Call list, but Defendant persisted in making illegal phone calls in Defendant's attempt to cajole Plaintiff into doing business with Defendants or purely to harass Plaintiff and to cause Plaintiff emotional distress.

55. eMortgage Funding Company knew that Plaintiff was on the Do Not Call list because Plaintiff had requested to be placed on the list and was confirmed as being on the list.

56. The calls made by Defendant after Plaintiff requested that Defendant's calls cease and after he placed on the Do Not Call list violated 47 USCS § 227 and its implementing regulations, 47 C.F.R. § 64.1200, et seq.

57. Plaintiff suffered damages  and injury as a result of Defendant's calls.

58. The unwanted calls invaded Plaintiff's privacy and caused Plaintiff undue stress, harassment and annoyance.

59. Plaintiff also experienced emotional distress, lost time, disruption of daily activities, costs incurred to avoid or block the calls, or other actual

damages and legal fees incurred with respect to consulting counsel regarding Plaintiff's rights and remedies to Defendants' conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

B. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

C. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

D. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

E. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

F. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss suffered by Plaintiff as a result of Defendants' violations but not less

than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

G. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

H. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

I. Such other relief as the Court deems just and proper.

## Count II

## Violation of 47 USC §227

### (Against Defendant eMortgage Funding Company )

60. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

61. Initially, the calls made to Plaintiff were made for purposes of advertisement, telephone solicitation or in connection with telemarketing.

62. Plaintiff provided verbal notice to Defendant requesting that Defendant cease calls to him.

63. Plaintiff also provided written notice to Defendant requesting cessation of calls.

64. Plaintiff provided both verbal and written notice to EMortgage Funding Company requesting that it cease and desist from making telephone calls. See Exhibit B

65. Defendant received the verbal and written cease-and-desist notices, as noted on Exhibit A.

66. Defendant continued to make telephone calls and texts to Plaintiff after receiving the cease-and-desist notices.

67. Despite receiving these cease-and-desist notices, EMortgage Funding Company continued to make telephone calls and texts to Plaintiff.

68. The calls made by Defendant after receiving the cease-and-desist notices violated 47 USCS § 227 and its implementing regulations, 47 C.F.R. § 64.1200.

69. The unwanted calls invaded Plaintiff's privacy and caused Plaintiff stress, harassment and annoyance.

70. As a consequence of Defendants' illegal acts, Plaintiff suffered emotional distress, lost time, disruption of daily activities, costs incurred to avoid or block the calls, or other actual damages, including legal fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

J. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

K. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

L. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

M. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

N. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

O. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss suffered by Plaintiff as a result of Defendants' violations but not less than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

P. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

Q. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

R. Such other relief as the Court deems just and proper.

## Count III

## Violation of 47 USCS §227

## (Against Defendant Samer Ajami)

71. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

72. Defendant Samer Ajami made or participated in making ongoing illegal and harassing telephone calls and texts to Plaintiff.

73. The times and dates of the Defendant's acts are described on Exhibit A.

74. Initially, the calls were made for purposes of telephone solicitation or in connection with telemarketing.

75. After the first call, to which Plaintiff responded that he was not interested in doing business with the Defendants, the calls were not merely advertising but were solicitation of a business relationship to which Plaintiff had rejected.

76. Defendant Ajami, however, persisted in making the calls presumably to cajole Plaintiff into doing business with the Defendants.

77. Defendant Ajami's calls were also being made with the intent to harass Plaintiff and were not made in a good faith attempt to conduct telemarketing business because Plaintiff had already rejected a business relationship with Defendants Ajami and eMortgage.

78. Defendant Ajami was argumentative with Plaintiff when Plaintiff tried to dismiss his calls and rejected a business relationship with Defendants.

79. Plaintiff had no business relationship between the Samer Ajami nor eMortgage Funding Company  in connection with the complaint about telemarketing activities.

80. Defendant made or participated in making calls to Plaintiff after Plaintiff requested that his calls cease and desist and after Plaintiff requested that Plaintiff be placed on the Do Not Call list.

81. Despite Plaintiff being on the Do Not Call list, Samer Ajami ignored Plaintiff's repeated requests that he cease and desist from contacting Plaintiff and continued to either orchestrate or to make or participate in making the unwanted, unwarranted and illegal telephone calls and texts to Plaintiff.

82. Defendant Ajami, on behalf of  Defendant eMortgage, failed to maintain or honor a Do Not Call List as required by statute.

83. The calls from Defendants have persisted up to fourteen days prior to filing this Complaint. See Exhibit A.

84. Defendant knew or should have known that Plaintiff was on the federal Do Not Call list as well as the Do Not Call List required to be maintained by federal statute.

85. Defendant Ajami knew or should have known that Plaintiff was on the Do Not Call list because Plaintiff had requested to be placed on the list and the Defendant Ajami had access to or knowledge of the list through its relationship with eMortgage Funding Company .

86. Defendant is jointly and severally liable with EMortgage Funding Company for these violations.

87. Defendant Ajami is jointly and severally liable with eMortgage Funding Company  for the TCPA violations described herein.

88. Defendant Ajami directly made the calls, as directed and authorized by EMortgage Funding Company  to make the calls on its behalf or orchestrated the initiation of the calls by others within his control or direction and that of eMortgage.

89. Defendant Ajami was attempting to benefit financially from the calls, and acted in concert or pursuant to a common plan to make the calls on behalf of eMortgage.

90. eMortgage had control over Defendant Ajami's telemarketing activities, or Ajami and Mortgage had an agency or principal-agent relationship or an employer-employee relationship.

91. The calls made by or at the direction of Defendant after Plaintiff was placed on the Do Not Call list violated 47 USCS § 227 and its implementing regulations 47 C.F.R. § 64.1200, et seq.

92. Plaintiff suffered damages and injury as a result of Defendant's calls.

93. The unwanted calls invaded Plaintiff's privacy and caused Plaintiff unwarranted harassment, stress and annoyance.

94. As a result of Ajami's illegal acts, Plaintiff suffered specific harms, including emotional distress, lost time, disruption of daily activities, costs incurred to avoid or block the calls, or other actual damages, including legal fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

B. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

C. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

D. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

E. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

F. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss suffered by Plaintiff as a result of Defendants' violations but not less than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

G. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

H. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

I. Such other relief as the Court deems just and proper.

## Count IV

### Violation of 47 USCS §227

### (Against Defendant Samer Ajami)

95. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

96. Defendant made or participated in making telephone calls and texts to Plaintiff.

97. Defendant Ajami made or participated in making ongoing and harassing telephone calls and texts to Plaintiff.

98. The specific dates and times of the calls, as Described on Exhibit A.

99. All calls to Plaintiff, with the possible exception of the last call made approximately fourteen (14) days prior to the filing of this complaint were made by Defendant Samer Ajami

100. The calls were made for purposes of telephone solicitation or in connection with telemarketing or to cause Plaintiff severe emotional distress, harassment and interference with Plaintiff's employment and other daily activities.

101. The Defendant's calls were made in furtherance of his attempts to sell mortgage products or services, the calls were not merely advertisements, and the Plaintiff had no relationship with either Ajami or eMortgage Funding Company in connection with the telemarketing activities, with the exception of the first call made by Defendants.

102. Plaintiff provided verbal notice requesting cessation of calls.

103. Plaintiff provided written notice requesting cessation of calls.

104. Defendants received or should have received the verbal and written cease-and-desist notices.

105. Defendant Ajami received or should have received the verbal and written cease-and-desist notices through his relationship with eMortgage.

106. Defendant eMortgage either failed to inform its employees or agent of the Do Not Call List or purposely ignored it, in violation of the TCPA.

107. Defendant is jointly and severally liable with eMortgage Funding Company for these violations.

108. Defendant Samer Ajami and EMortgage Funding Company acted in concert or pursuant to a common plan to make the calls to Plaintiff.

109. Defendant Ajami had control over his calling activities on its behalf or the eMortgage with which he had an agency or principal-agent relationship or employer-employee relationship through which eMortgage authorized and controlled the activities of Defendant Ajami.

110. The calls made by or at the direction of Defendants after receiving the cease-and-desist notices violated 47 USCS § 227 and its implementing regulations as cited above.

111. Plaintiff suffered injury as a result of Defendant's calls.

112. The unwanted calls invaded Plaintiff's privacy and caused Plaintiff harassment and annoyance.

113. Plaintiff also suffered specific harms, including emotional distress, lost time, disruption of daily activities, costs incurred to avoid or block the calls, or other actual damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

B. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

C. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

D. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

E. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

F. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss

suffered by Plaintiff as a result of Defendants' violations but not less than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

G. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

H. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

I. Such other relief as the Court deems just and proper.

## Count V

## Violation of State Law

**(Against Defendants eMortgage and Samer Ajami, Jointly and Severally )**

114. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

115. The above-described actions by Defendants violated the Michigan Do Not Call List requirements of MCLA §445.111a & §445.111c

116. The assertion by Samer Ajami that a business relationship existed between Plaintiff and eMortgage Funding, subsequent to its actual termination, violated MCLA 445.11c and entitles Plaintiff of damages as provided by statute.

## Count VI

### Intentional Infliction of Emotional Distress

117. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

118. Defendants made repeated telephone calls and texts to Plaintiff.

119. The calls were made by Defendant sales representative on behalf of Defendant mortgage company.

120. The calls were made in violation of the Telephone Consumer Protection Act (TCPA), 47 USCS § 227.

121. Plaintiff did not consent to receiving the calls from Defendants.

122. The calls were made with the intent to cause Plaintiff harassment, stress, and emotional distress.

123. The calls interfered with Plaintiff's day-to-day business activities.

124. The calls interfered with Plaintiff's personal activities.

125. As a result of the repeated calls, Plaintiff suffered severe emotional distress and anxiety, missed employment hours, and medical bills.

126. As a result of the repeated calls, Plaintiff experienced interference with his ability to conduct his daily business and personal affairs, high blood pressure.

127. Defendants' conduct in making repeated calls was extreme and outrageous, exceeding all bounds of decency.

128. Defendants' conduct was willful, intentional, and reckless.

129. Defendant sales representative was acting within the scope of his employment with Defendant mortgage company when making the calls.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

B. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

C. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

D. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

E. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

F. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss

suffered by Plaintiff as a result of Defendants' violations but not less than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

G. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

H. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

I. Such other relief as the Court deems just and proper.

## Count VII

### Negligent Infliction of Emotional Distress

130. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

131. Defendants owed a duty of care to Plaintiff.

132. Defendants owed a duty to Plaintiff not to engage in conduct that would foreseeably cause severe emotional distress.

133. By making repeated unwanted telephone calls in violation of federal law, Defendants owed a duty to exercise reasonable care to avoid causing emotional harm to Plaintiff.

134. Defendants, as licensed mortgage broker and sales representatives had knowledge of the laws pertaining to their telemarketing efforts and had knowledge of the harmful effects of repeated unwanted calls, or Defendants' policies and procedures regarding telephone contacts.

135. Defendants breached their duty of care to Plaintiff.

136. Defendants breached their duty by making repeated telephone calls to Plaintiff without Plaintiff's consent.

137. Defendants breached their duty by making calls in violation of 47 USCS § 227.

138. Defendants breached their duty by continuing to make calls despite knowing or having reason to know that such calls would cause Plaintiff emotional distress.

139. Defendants acted recklessly and with disregard for Plaintiff's well-being by persisting in making unwanted calls.

140. Plaintiff repeatedly requested Defendants to stop calling, but the frequency of Defendants calls did not decrease, the calls continued and were particularly intrusive or aggressive, even interfering with the closing of alternative financing that Plaintiff chose to secure.

141. If they existed, Defendants ignored the internal policies and legal requirements of the company and federal regulations.

142. Defendants' breach of duty was the proximate cause of Plaintiff's emotional distress and, as a result of the repeated calls, Plaintiff suffered

severe emotional distress and anxiety, missed employment hours, and medical bills.

143. As a result of the repeated calls, Plaintiff experienced interference with his ability to conduct his daily business and personal affairs, high blood pressure.

144. The effects of Defendant's outrageous conduct was the direct cause of Plaintiff's emotional distress.

145. But for Defendants' negligent conduct in making repeated calls in violation of federal law, Plaintiff would not have suffered severe emotional distress.

146. Defendants' conduct was a substantial factor in causing Plaintiff's emotional distress.

147. Plaintiff suffered severe emotional distress.

148. As a result of Defendants' negligent conduct, Plaintiff suffered severe emotional distress, stress, and anxiety.

149. The emotional distress suffered by Plaintiff interfered with his day-to-day business activities.

150. The emotional distress suffered by Plaintiff interfered with his personal activities.

151. Plaintiff's symptoms of emotional distress included  high blood pressure, anxiety, depression, lost sleep, sleep disturbances, difficulty concentrating.

152. The emotional distress suffered by Plaintiff was a foreseeable result of Defendants' negligent conduct.

153. It was foreseeable that making repeated unwanted telephone calls in violation of federal law would cause a reasonable person to suffer severe emotional distress.

154. Defendants knew or should have known that their conduct would cause Plaintiff to suffer emotional distress.

155. The type of emotional harm suffered by Plaintiff was a natural and probable consequence of Defendants' negligent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

B. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

C. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

D. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

E. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

F. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss suffered by Plaintiff as a result of Defendants' violations but not less than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

G. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

H. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

I. Such other relief as the Court deems just and proper.

## Count VIII

### Civil Conspiracy

156. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

157. Defendant and other telemarketing individuals, including Stella Louie, combined and agreed among themselves to engage in concerted telemarketing conduct directed at Plaintiff.

158. The object of the combination and agreement was to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means, through coordinated telemarketing conduct.

159. The acts of the Defendants, in concert with others establish the agreement by their acts and the circumstances, other acts, and conduct of Defendants and the other telemarketing individuals, including Stella Louie, demonstrating an agreement in fact.

160. In furtherance of their agreement and conspiracy, Defendant and the other telemarketing individuals, including Stella Louie, committed overt acts consistent with the common plan, including coordinated telemarketing activity directed at Plaintiff.

161. The conspiracy was carried out through, and is dependent upon, the underlying actionable tort(s) alleged in this Complaint, which caused harm to Plaintiff.

162. As a direct and proximate result of Defendant's conspiracy with the other telemarketing individuals, including Stella Louie, Plaintiff suffered damages as alleged in this Complaint.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants as follows:

A. Compensatory damages against all defendants in an amount to be determined at trial for emotional distress, anxiety, stress, and interference with business and personal activities.

B. Statutory damages against all defendants pursuant to 47 USCS § 227 in the amount of $500 per violation, or up to $1,500 per violation if the violations were willful or knowing.

C. Punitive damages against all defendants in an amount to be determined at trial to punish Defendants for their willful, intentional, and reckless conduct and to deter similar conduct in the future.

D. Attorney's fees and costs incurred in prosecuting this action pursuant to 47 USCS § 227.

E. A permanent injunction prohibiting Defendants from making further calls, texts or other unsolicited contacts with or to Plaintiff in violation of the TCPA.

F. Exemplarity damages against all Defendants, jointly and severally, in an amount to be determined at trial for any actual monetary loss suffered by Plaintiff as a result of Defendants' violations but not less than $5,000,000.00 trebled due to Defendants' failure to abide by known statutory standards of conduct.

G. Judgment against Defendant (and any additional conspirators properly joined) for all relief available under law and equity, consistent with the Prayer for Relief in the Complaint.

H. Under the laws of the State of Michigan, an award of not less than the greater of actual damages proven or $250.00.

I. Such other relief as the Court deems just and proper.


## JURY DEMAND


Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted:
Gudeman & Associates, P.C.

By_____
        Edward J. Gudeman (P-14454)
401 N. Main Street
First Floor
Royal Oak, Michigan
Phone:     248-546-2800

# EXHIBIT A

EXHBIT A

Samer Ajami Call log                                          Call Plaintiff's Phone No. 619-829-6818

| DAY | | TIME | DURATION | OUTCOME |
|---|---|---|---|---|
| TUESDAY | 12/9/25 | 2:49PM | 9 MIN 34 SEC | SALES PITCH |
| WEDNESDAY | 12/10/25 | 3:14PM | DECLINED | |
| WEDNESDAY | 12/10/25 | 3:14PM | DECLINED | |
| WEDNESDAY | 12/10/25 | 8:27PM | 12MIN 54SEC | 1ST TIME VERBALLY TOLD HIM I AM ON THE DO NOT CALL LIST NOT INTERESTED AND STOP CALLING |
| WEDNESDAY | 12/10/25 | 8:46PM | MISSED/IGNORED | DID NOT KNOW IT WAS SAMER BEFORE CALLING BACK/SALE PITCH |
| WEDNESDAY | 12/10/25 | 8:57PM | 12MIN 54SEC | 2ND TIME VERBALLY TOLD HIM I AM ON THE DO NOT CALL LIST NOT INTERESTED AND STOP CALLING |
| WEDNESDAY | 12/10/25 | 9:10PM | 11MIN 34SEC | |
| WEDNESDAY | 12/10/25 | 9:30PM | MISSED/IGNORED | |
| WEDNESDAY | 12/10/25 | 10:14PM | 22SEC | 3RD TIME I VERBALLY TOLD HIM ON DO NOT CALL LIST/STOP CALLING |
| WEDNESDAY | 12/10/25 | 10:15PM | DECLINED | |
| WEDNESDAY | 12/10/25 | 10:17PM | DECLINED | |
| THURSDAY | 12/11/25 | 4:28PM | DECLINED | |
| THURSDAY | 12/11/25 | 4:28PM | DECLINED | |
| THURSDAY | 12/11/25 | 4:29PM | DECLINED | |
| THURSDAY | 12/11/25 | 5:24PM | MISSED/IGNORED | |
| THURSDAY | 12/11/25 | 5:25PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 11:00AM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 11:01AM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 2:11PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 2:12PM | 2MIN 15SEC | I TOLD HIM ON DO NOT CALL LIST/STOP CALLING |
| FRIDAY | 12/12/25 | 2:15PM | 2MIN 18SEC | I TOLD HIM ON DO NOT CALL LIST/STOP CALLING |
| FRIDAY | 12/12/25 | 2:18PM | DECLINED | |
| FRIDAY | 12/12/25 | 2:18PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 2:20PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 2:22PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 2:27PM | DECLINED | CALLED MY CALIFORNIA BUSSINESS PHONE NUMBER 424-335-5224/ALSO ON DO NOT CALL REGRISTRY |
| FRIDAY | 12/12/25 | 2:28PM | DECLINED | CALLED MY CALIFORNIA BUSSINESS PHONE NUMBER 424-335-5224/ALSO ON DO NOT CALL REGRISTRY |
| FRIDAY | 12/12/25 | 2:29PM | 19MIN | CALLED MY CALIFORNIA BUSSINESS PHONE NUMBER 424-335-5224 GAINED THE RECORDING FROM THIS CALL. |
| FRIDAY | 12/12/25 | 2:29PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 3:06PM | 3MIN | CALLED MY CALIFORNIA BUSSINESS PHONE NUMBER 424-335-5224 TOLD HIM TO STOP CALLING ME./ALSO ON DO NOT CALL REGRISTRY |
| FRIDAY | 12/12/25 | 5:28PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:47PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 5:48PM | DECLINED | |

| | | | | |
|---|---|---|---|---|
| FRIDAY | 12/12/25 | 5:49PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 5:51PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:52PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:52PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:53PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:54PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:54PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:54PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 5:57PM | DECLINED | |
| FRIDAY | 12/12/25 | 5:57PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:02PM | DECLINED | |
| FRIDAY | 12/12/25 | 6:03PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:04PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:06PM | DECLINED | |
| FRIDAY | 12/12/25 | 6:09PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:15PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:16PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:25PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:26PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:31PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 6:33PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 9:14PM | 7SEC | I TOLD HIM ON DO NOT CALL LIST/STOP CALLING |
| FRIDAY | 12/12/25 | 9:15PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 9:16PM | 26SEC | I TOLD HIM ON DO NOT CALL LIST/STOP CALLING |
| FRIDAY | 12/12/25 | 9:17PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 9:17PM | MISSED/IGNORED | |
| FRIDAY | 12/12/25 | 9:18PM | DECLINED | |
| FRIDAY | 12/12/25 | 9:18PM | MISSED/IGNORED | |
| TUESDAY | 12/16/25 | 12:31AM | DECLINED | |
| TUESDAY | 12/16/25 | 12:31AM | DECLINED | |
| TUESDAY | 12/16/25 | 12:32AM | DECLINED | |
| TUESDAY | 12/16/25 | 12:32AM | MISSED/IGNORED | |
| TUESDAY | 12/16/25 | 12:38AM | MISSED/IGNORED | |
| TUESDAY | 12/16/25 | 12:02PM | MISSED/IGNORED | |
| TUESDAY | 12/16/25 | 12:02PM | MISSED/IGNORED | |
| TUESDAY | 12/16/25 | 12:03PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:04PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:04PM | MISSED/IGNORED | |
| TUESDAY | 12/16/25 | 12:04PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:05PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:05PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:05PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:05PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:05PM | DECLINED | |
| TUESDAY | 12/16/25 | 12:06PM | MISSED/IGNORED | |

| | | | | |
|---|---|---|---|---|
| WEDNESDAY | 12/17/25 | 9:30PM | MISSED/IGNORED | |
| THURSDAY | 12/18/25 | 6:14PM | 2MIN 14SEC | STELLA LOUIS, SAMERS MANAGER/SHE WAS FULLY AWARE OF THE SITUATION/WANTED TO TAKE OVER IN HIS PLACE./TOLD HER ON DO NOT CALL LIST/STOP CALLING. |
| TUESDAY | 2/03/26 | 12:38PM | 1MIN 22SEC | SALES PITCH BY UNKNOWN EMORGAGE EMPLOYEE. I TOLD HIM ON DO NOT CALL LIST/STOP CALLING.DID NOT KNOW IT WAS EMORGAGE BEFORE I ANSWERED. |
| FRIDAY | 2/20/26 | 2:42PM | 5MIN 41SEC | SALES PITCH BY UNKNOWN EMORGAGE EMPLOYEE. I TOLD HIM ON DO NOT CALL LIST/STOP CALLING. DID NOT KNOW IT WAS EMORGAGE BEFORE I ANSWERED. |
| WEDNESDAY | 3/4/26 | 3:07PM | 39SEC | WHILE AT ATTORNEY OFFICE. SALES PITCH BY DOMINIC. I TOLD HIM ON DO NOT CALL LIST/STOP CALLING. DID NOT KNOW IT WAS EMORGAGE BEFORE I ANSWERED. |
| WEDNESDAY | 3/4/26 | 3:14PM | 59SEC | WHILE AT ATTORNEY OFFICE. SALES PITCH BY LORENZO. I TOLD HIM ON DO NOT CALL LIST/STOP CALLING. DID NOT KNOW IT WAS EMORGAGE BEFORE I ANSWERED. |
| MONDAY | 3/16/26 | 4:08PM | DECLINED | |
| MONDAY | 3/16/26 | 4:09PM | DECLINED | |
| MONDAY | 3/16/26 | 7:36PM | DECLINED | |
| MONDAY | 3/16/26 | 7:37PM | DECLINED | |
| WEDNESDAY | 3/18/2026 | | DECLINED | CALL FROM SAMIR AJAMI |

# EXHIBIT B

2:04



# Your Complaint Has Been Accepted

Thank you for filing your complaint with the National Do Not Call Registry.

Do not call complaints will be entered into a secure online database available to civil and criminal law enforcement agencies. While the FTC does not resolve individual consumer problems, your complaint will help the agency investigate the company, and could lead to law enforcement action.

Click on a question below to learn more.

⊞ Will I hear back from the FTC regarding my complaint?

⊞ What can I do to stop unwanted calls?

⊞ My number is on the Registry, so why am I still getting illegal calls?

⊞ What is the FTC doing to stop these calls?

⊞ I gave you the phone number of the company



donotcall.gov

2:03

## Comments?

Please provide any additional information that you think might be helpful. You can enter up to 1000 characters. **Do not** include any personally identifiable information, such as your Social Security Number.

Comment:

I am on the do not call registery. I have filed a complaint with the Federal Trade Commission (Complaint #195098203). I have also filed a criminal complaint for criminal harrasment with the Troy, MI Police Department. Samer has called me as recently as 855pm on 12/20/2025. Not only has Samer continued to call, but also his

You have entered **1000** of your 1000 available characters.

SUBMIT          CANCEL

Back to ftc.gov | Privacy Policy

1 2 3 4 5 6 7 8 9 0

q w e r t y u i o p

a s d f g h j k l

z x c v b n m

!#1    ,    English (US)    .

2:03

**Comments?**

Please provide any additional information that you think might be helpful. You can enter up to 1000 characters. **Do not** include any personally identifiable information, such as your Social Security Number.

Comment:

> recently as 855pm on 12/20/2025. Not only has Samer continued to call, but also his manager Stella Louis NMLS #2430258. I also have in my possession a recorded call between Samer Ajami and I where I very clearly state that I have told him in the past and again on that call to stop calling me and that I am on the do

You have entered **1000** of your 1000 available characters.

SUBMIT        CANCEL

Back to ftc.gov | Privacy Policy

1 2 3 4 5 6 7 8 9 0

q w e r t y u i o p

a s d f g h j k l

z x c v b n m

!#1 , English (US) .

2:03

Comments:

Please provide any additional information that you think might be helpful. You can enter up to 1000 characters. **Do not** include any personally identifiable information, such as your Social Security Number.

Comment:

> call between Samer Ajami and I where I very clearly state that I have told him in the past and again on that call to stop calling me and that I am on the do not call registery. Samer Ajami acknowledges this. However, he very clearly dismisses my request and continues his sales tactics.|

You have entered **1000** of your 1000 available characters.

SUBMIT     CANCEL

Back to ftc.gov | Privacy Policy

# EXHIBIT C



DATE 12 / 18 / 25

Your case number for this report is:

25 - 39219

Copies of this report should be available in 72 hours. Copies of Police Reports may be obtained from the Police Records Section for a fee. Please call the Police Records Section at the number listed below for hours of operation and location. Copies of Traffic Crash Reports may also be purchased on the internet at www.clemis.org.

**FOR INQUIRIES ABOUT COPIES OF ALL REPORTS, INCLUDING TRAFFIC ACCIDENT REPORTS, CALL:**

**POLICE RECORDS SECTION  (248) 524-3437**

If the officer taking this report indicates there is sufficient evidence to permit further investigation, a Detective may contact you. For inquiries on cases BEING INVESTIGATED please see the phone numbers listed below.

Traffic/Accident Investigation .............. (248) 619-7656
Criminal Investigation ........... (248) 524-3453
Patrol ..................................... (248) 524-3426

To add information to this report, appear in person at the Police Desk to complete a supplemental report.

OFFICER _____ J 565

**TROY POLICE DEPARTMENT
500 W. BIG BEAVER ROAD
TROY, MI 48084**